# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEANNE A. MCFARLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-2135-KHV |
| UPS GROUND FREIGHT, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

In this removed action, plaintiff asserts claims under the Employee Retirement Income Security Act ("ERISA"), challenging the denial of life insurance benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and seeking to recover a penalty for defendants' failure to comply with the disclosure requirements of 29 U.S.C. § 1132(c). This matter is before the Court on the following motions: (1) <u>Defendants United Parcel Services, Inc.'s And UPS Ground Freight, Inc.'s Motion For Summary Judgment</u> (Doc. #47) filed March 18, 2013, and (2) <u>The Prudential Insurance Company Of America's Joinder In UPS' Motion For Summary Judgment</u> (Doc. #55) filed April 25, 2013.[1] For the following reasons the Court overrules both motions.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

---

[1] Prudential Insurance Company of America earlier filed a motion to dismiss. <u>The Prudential Insurance Company Of America's Motion To Dismiss</u> (Doc. #13) filed April 18, 2012. Plaintiff opposed the motion and in response sought leave to amend her complaint. <u>Plaintiff's Motion For Leave To File Second Amended Complaint</u> (Doc. #35) filed July 31, 2012. The Court overruled Prudential's motion and sustained plaintiff's motion, <u>Memorandum and Order</u> (Doc. #41) filed February 12, 2013, and plaintiff filed a second amended complaint, (Doc. #42) filed February 14, 2013.

fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. Liberty Lobby, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which she carries the burden of proof. Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As to these matters, the nonmoving party may not rest on her pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085. Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact. Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment. Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010); see Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is

"whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**Facts**

The following facts are uncontroverted or presented in the light most favorable to plaintiff:

Plaintiff's husband, Toli Fuimaono, Jr., was an employee of UPS Ground Freight, Inc., formerly Overnite Transportation Company, a company of United Parcel Services, Inc. As an employee of UPS, Fuimaono was entitled to basic life insurance benefits at no cost to him and to supplemental life insurance benefits, which he paid for through automatic payroll deductions. Beginning in or before December of 2004, Fuimaono participated in the UPS supplemental life insurance plan that offered "basic plus 2 times pay," which means that benefits under the plan were equal to one year of decedent's salary plus twice that amount. Fuimaono continued to participate in the supplemental life insurance plan, with no changes in his election, for the remainder of his employment with UPS (which was coterminous with his death on January 31, 2007).

Fuimaono was injured on the job in February of 2006, and for quite some time he was on workers compensation and medical leave. Physicians released him to return to work for about one week in August of 2006 and again for the last week or two before his death. He remained a UPS employee throughout his leave, but during that time neither he nor his wife received any communication from defendants about his supplemental life insurance benefits, including direct billing for premium payments or notice of lapsed coverage. Likewise, Fuimaono received no such notice during the short periods in which he returned to work, and his wife did not receive notice

following his death.[2] Plaintiff and Fuimaono shared the task of opening and reviewing mail which they received at home.

Fuimaono was entitled to prior notice of any impending lapse of his supplemental life insurance coverage, even when he was on workers compensation or medical leave, to give him the opportunity to pay the premiums himself.

After Prudential paid plaintiff $42,922.20 in life insurance benefits – the amount of the "basic life" plan – plaintiff asked UPS why she had not received benefits from Fuimaono's supplemental life insurance. In February of 2007, UPS told plaintiff that Fuimaono's supplemental life insurance had lapsed for nonpayment of premiums in either August or November of 2006. Plaintiff received no additional details about when or why the coverage lapsed. Plaintiff asserts that if Fuimaono had received the notice of impending lapse to which he was entitled, he would have paid the premium because he knew that his lung cancer was terminal.

In a letter dated August 29, 2010, plaintiff through counsel made demand upon UPS and Aetna FSA for payment of Fuimaono's supplemental life insurance benefits in the amount of $84,000 plus interest.[3] Doc. #50-3. Neither addressee responded to the letter. Nearly one year later,

---

[2] Fuimaono received a regular paycheck for the one week he worked in August of 2006, and $12.96 was deducted from that paycheck to pay the premium for his supplemental life insurance plan. His last paycheck, dated February 24, 2007, included no such deduction.

[3] The letter dated August 29, 2010 is addressed to the Overnite Benefits Department in Richmond, Virginia and Aetna FSA (the second amended complaint lists it as "Aetna FS"). Plaintiff states that Aetna FSA is the insurance provider named in the UPS 2006 Employee Benefits Guide. The Guide identifies Aetna Life Insurance Company as the supplemental life insurance plan administrator and provides an address for it in Lexington, Kentucky. Doc. #52-2 at 5. The letter is instead addressed to Aetna FSA in Richmond, Kentucky, which the Guide lists as the claims address for the Flexible Spending Account plan. The two plans are listed one above the other on a page which contains the addresses and other identifying information for 14 different plans, so presumably
(continued...)

plaintiff and her counsel sent a second letter to the Overnite Benefits Department and to Jennifer Brummett at Prudential Life Insurance Company. Doc. #50-4. This letter likewise demanded payment of the supplemental life insurance benefits. For Ms. Brummett's benefit, counsel enclosed a copy of his first letter, explaining that "UPS Overnite Benefits Department informed me that this letter should have been sent to Prudential Life Insurance of America, and not Aetna FSA mentioned in the Overnite Employee Benefits Materials." Id. at 2. In addition, plaintiff and her counsel made a request pursuant to 29 U.S.C. § 1132(c) for information and documents relating to those benefits, including the identity and contact information for the plan administrator, enrollment and premium payment documents, plan documents including the summary plan description ("SPD") and all cancellation correspondence and notice.

In a letter dated September 16, 2011, Prudential told plaintiff that it had no enrollment and eligibility records because it relied on a third-party administrator, Hewitt Associates, to provide such records for UPS. Prudential gave no contact information for Hewitt Associates. Prudential explained that it had received notice of Fuimaono's death in February of 2007 from Hewitt Associates and that it had paid $42,922.20 to plaintiff in April of 2007 in response to a claim for basic benefits. The letter further explained that Fuimaono had no supplemental life insurance coverage when he died because it had lapsed on August 17, 2006, for non-payment of premiums. Prudential's letter stated that it would contact Hewitt Associates for information surrounding

---

[3](...continued)
the writer's eye fell on the next line above when copying the address. Doc. #51-2 at 3.
The same page of the Guide also lists the Overnite Benefits Department with its address.

Fuimaono's insurance.[4]

Prudential followed with a second letter dated September 29, 2011, in which it denied plaintiff's claim "for Optional Life Benefits in the amount of $170,000.00 on the late Toli Fuimaono Jr. under Group Policy (G-76536) issued to UPS." Doc. #15-1 at 3.[5] The letter quoted an excerpt from Group Policy G-76536 which sets forth events that cause coverage under the plan to end. One such event is failure to pay any required contribution when due. According to the letter (which was based on information that UPS provided to Prudential), Fuimaono elected Optional Life coverage on July 1, 2006. Although premiums for that coverage were originally collected through payroll deductions, UPS requested premiums by direct billing when Fuimaono went on medical leave and Fuimaono did not remit such payments. According to Prudential, Fuimaono's coverage had therefore ended under the terms of the contract. Prudential concluded its letter by reciting plaintiff's appeal rights. Id. at 2-3.

Neither letter from Prudential included any of the documents which plaintiff had requested, and Prudential did not provide the documents at any other time.

UPS never responded to plaintiff's letters and never provided her any documents.

Before she filed suit in the District Court of Johnson County, Kansas on February 2, 2012, plaintiff had no further communications with any defendant concerning Fuimaono's supplemental life insurance benefits.

---

[4] No party has submitted a copy of Prudential's letter of September 16, 2011. Plaintiff describes its contents in her second amended complaint and Prudential quotes two paragraphs in its answer.

[5] Although no party submitted a copy of Prudential's letter of September 29, 2011 in the summary judgment briefing, Prudential had earlier submitted a copy in support of its motion to dismiss.

Although UPS asserts that each employee of UPS, including Fuimaono, receives a copy of the UPS Flexible Benefits Plan, Plan No. 501 ("the 501 plan"), and its SPD, plaintiff denies that Fuimaono received a copy of either document and states that she had been requesting those documents since February of 2007.[6] Plaintiff further states that the "Overnite a UPS Company 2006 Employee Benefits Guide," which Fuimaono received on or about October 1, 2005, is the only item approximating a plan document that she and Fuimaono had in their possession. See Doc. #49-2 at 2-3 (plaintiff affidavit); Docs. ##51-2, 52-2, 53-1 (collectively, "the Overnite a UPS Company 2006 Employee Benefits Guide"). Accordingly, to the extent that UPS sets forth as undisputed excerpts from the 501 plan or its SPD, plaintiff admits the documents' contents but controverts their applicability because she denies that she or Fuimaono saw the documents before defendants produced them in this lawsuit.

Similarly, plaintiff does not dispute the facts that UPS asserts with respect to the customary mailing procedure which Aon Hewitt uses to send direct premium billing notices to UPS employees on leave.[7] She does, however, deny that she or Fuimaono received any such billing notices for Fuimaono's supplemental life insurance.

## **Analysis**

UPS contends that plaintiff is not entitled to benefits from Fuimaono's supplemental life insurance policy because the coverage lapsed on August 17, 2006 due to his non-payment of premiums. UPS further argues that plaintiff's cause of action is barred by the plan's private three-

---

[6] UPS submitted a copy of a plan and an SPD along with its summary judgment motion, which Prudential and UPS respectively had produced to plaintiff in discovery. See Docs. ##48-4, 48-3.

[7] The Court presumes that Aon Hewitt and Hewitt Associates are one and the same.

year statute of limitations.[8]  The record, however, negates both arguments.

Defendants represent that Fuimaono's supplemental life insurance benefits were provided under the "The UPS Flexible Benefits Plan," a copy of which they submit and whose terms they rely on in support of their summary judgment motion.  See Doc. #48-4.[9]  The document is consecutively paginated and includes a five-page SPD.  Id. at 51-55.  The SPD identifies the UPS Flexible Benefits Plan as Plan Number 503.  Id. at 51.

Defendants also submit a separate document which they identify as the corresponding SPD, and indeed it bears the title "The Flexible Benefits Plan Summary Plan Description."  See Doc. #48-3.[10]  Defendants represent that language in this SPD sets forth Fuimaono's responsibility for paying supplemental life insurance premiums while he was on approved leave of absence.  See Doc. #48 at 4 ¶9.  This SPD, however, identifies its corresponding plan as Plan Number 501, not Plan Number 503.  Clearly the two documents do not belong together despite defendants' representations in their submissions and affidavits.

Even more disturbing is the fact that neither document bears any resemblance to the documents which plaintiff submits, all of which came from Fuimaono's employer.  The first is the "Overnite a UPS Company 2006 Employee Benefits Guide" ("the Guide"), which lists the vendor

---

[8]  Prudential joins UPS's motion and incorporates its supporting and reply memoranda without supplementation.

[9]  UPS actually refers to the document as an " information brochure."  See Defendants United Parcel Services, Inc.'s And UPS Ground Freight, Inc.'s Motion For Summary Judgment (Doc. #47) at 4 ¶¶10-11, 9 ¶45.  The document is more than a brochure, however, as it and a certificate of coverage together constitute the group insurance certificate.  See Doc. #48-4 at 4. Affiant Ed Long accurately refers to the document as the "Plan."  See Doc. #48-1 at 2 ¶4.

[10]  Defendants offer no explanation as to why the UPS Flexible Benefits Plan contains its own SPD and that a separate SPD also exists.  The explanation appears to be that the separate SPD (Doc. #48-3) belongs to a different plan.

-8-

of its supplemental life insurance plan as Aetna Life Insurance Company, not Prudential. See Doc. #51-2 at 3. The same page identifies the group number of the supplemental life insurance plan as 656047, see id., while Prudential's letter to plaintiff's counsel refers to group number G-76536. See Doc. #15-1 at 1. The Guide sets forth the six events which cause termination of an employee's benefits, and the list is markedly different than that which appears in the Prudential plan document. Compare Doc. #51-2 at 6 with Doc. #48-4 at 44.

Most striking are the differences between the details of the supplemental life insurance programs set forth in the separate documents. In its letter to plaintiff's counsel dated September 29, 2011, Prudential wrote that Fuimaono had elected "Optional Life" coverage on July 1, 2006. Doc. #15-1 at 2. Although the record does not reveal when Fuimaono elected supplemental life insurance coverage (which is nowhere referred to in the record as "Optional Life"), plaintiff asserts that he had done so at least as of his paycheck in December of 2004. Doc. #42 at ¶7. The 2006 benefits enrollment worksheet that Overnite mailed to Fuimaono's home shows that he was certainly enrolled for 2005. Doc. #50-2 at 7. Although he made no change in his coverage for 2006 and his 2005 election therefore remained in place, see id. at 4, the Guide and the 2006 enrollment instructions clearly state that a change would have been effective January 1 – not July 1. Doc. #52-2 at 6; Doc. #50-2 at 2, 3.

Prudential Plan Number 503 provides coverage in increments of $1,000.00 with a maximum amount of $1 million in supplemental life insurance benefits. Doc. #48-4 at 6. The Guide states that the Aetna supplemental life insurance plan is calculated in a completely different manner, with an employee having the choice of benefit amount determined by a multiple of the employee's basic annual earnings, rounded up to the next $1,000.00. Doc. #52-2 at 5. The 2006 enrollment

-9-

documents confirm that the supplemental life insurance program in which Fuimaono enrolled was indeed calculated as a multiple of his earnings. The benefits enrollment worksheet contains the following chart:

*Supplemental Life Insurance*
Check one box only.

| 2006 Options | Coverage Amount | Weekly Cost |
|---|---|---|
| ★ **Basic Life (1 times pay, capped) (OBSLBC)** | $42,000 | $0.00 |
| ❏ **Basic + ½ times pay (capped) (OL.5BC)** | $63,000 | $2.86 |
| ❏ **Basic + 1 times pay (capped) (OLF1BC)** | $84,000 | $5.71 |
| ★❏ **Basic + 2 times pay (capped) (OLF2BC)** | $128,000 | $11.42 |
| **BENEFICIARY** Overnite automatically provides Basic life Insurance equal to one times your base salary. Therefore, selecting beneficiary(ies) is very important. You may update beneficiary information at any time by completing form OTC-395 Insurance Enrollment/Change Form available at your terminal/service center location. **This is not part of open enrollment.** | | |

★ This is your 2005 election.

Doc. #50-2 at 7.

Finally, the above chart confirms that Fuimaono elected supplemental benefits of two times his salary. With rounding of his salary, his election would result in benefits totaling $128,000.00, or a basic benefit of $42,000.00 plus twice that amount. That, too, is inconsistent with defendants' representation that Fuimaono had elected supplemental insurance of $200,000.00 but was eligible for a maximum of $170,000.00 in supplemental benefits. See Affidavit of Kathleen K. Earp, Doc. #48-2 at 1.

Clearly, material facts are at genuine issue in this case. The documentary evidence suggests that plaintiff is seeking supplemental life insurance benefits on her late husband's life from the "Overnite a UPS Company" plan in which Fuimaono was enrolled at the time of his death. Defendants, on the other hand, contend that plaintiff is not entitled to additional benefits under the

-10-

UPS Flexible Benefits Plan – for which it provides no evidence of Fuimaono's enrollment at any time.  Defendants are not entitled to summary judgment on plaintiff's second amended complaint.

**IT IS THEREFORE ORDERED** that Defendants United Parcel Services, Inc.'s And UPS Ground Freight, Inc.'s Motion For Summary Judgment (Doc. #47) filed March 18, 2013, and The Prudential Insurance Company Of America's Joinder In UPS' Motion For Summary Judgment (Doc. #55) filed April 25, 2013 be and hereby are **OVERRULED**.

Dated this 29th day of October, 2013, at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
