UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEANNE A. MCFARLAND,

Plaintiff,

v.                                              Case No. 12-2135-JPO

UPS GROUND FREIGHT, INC. et al.,

Defendants.

## MEMORANDUM AND ORDER

### I.    Introduction.

This suit, filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), challenges the denial of life insurance benefits and seeks to recover penalties and attorney's fees for alleged failure to comply with ERISA's disclosure requirements. The result in this case largely hinges on application of the so-called mailbox rule to certain delinquency notices sent by the insurer to the insured.

On June 23, 2014, with the parties consent,[1] the undersigned U.S. Magistrate Judge, James P. O'Hara, conducted a bench trial. The plaintiff, Jeanne A. McFarland, appeared in person and through counsel, Tamatane Aga, Jr. The defendants, United Parcel Services, Inc. and UPS Ground Freight, Inc., the latter formerly known as Overnite Transportation Company ("Overnite") (collectively, "UPS"), and The Prudential

_____

[1] *See* ECF doc. 66.

Insurance Company of America ("Prudential"), appeared through counsel, Karrie J. Clinkinbeard.

Several months before trial, U.S. District Judge Kathryn H. Vratil denied defendants' motions for summary judgment, although nearly all of the material facts of the case are uncontroverted.[2]   During the bench trial, the court heard sworn testimony from plaintiff Jeanne McFarland—her only witness.   Defendants called just two witnesses—Edward Long, the administrative services manager of UPS's corporate health care department, and Kathleen Earp, the benefits delivery director of Aon Hewitt, a third-party benefits administrator for UPS.

After trial, at the court's request, counsel filed revised proposed findings of fact and conclusions of law to clarify the issues in light of the actual testimony as captured in the trial transcript.[3]   The court is now prepared to rule.   This memorandum and order constitutes the court's findings of fact and conclusions of law, in accordance with Rule 52(a)(1) of the Federal Rules of Civil Procedure.

---

[2] ECF doc. 57.  Before trial, the court had counsel file proposed findings of fact and conclusions of law to better focus the few truly disputed issues.  ECF docs. 76 and 77.  At the outset of trial, the court established that, of plaintiff's seventy-two proposed factual findings, defendants only disputed paragraphs 7, 9, 13, 15-17, 20, 23-25, 29, 35, 55, 59-60, 63-65, and 69, and portions of paragraphs 11, 21, 31, 37, 47, 52, and 61-62. ECF doc. 79 at 10-11.  Of defendants' 49 proposed factual findings, plaintiff only disputed paragraphs 5-6, 12, 24, 47 and 49.  ECF doc. 79 at 12.

[3] ECF docs. 81, 83.

## II.   Findings of Fact.

Plaintiff's husband, Toli Fuimaono ("the decedent"), was employed by Overnite from 1999 until 2005.[4]  During the decedent's employment with Overnite, he enrolled in an optional supplemental life insurance plan through Aetna Insurance Company for "basic plus 2 times pay" (i.e., equal to one year's pay, plus twice one year's pay).[5]  In 2005, Overnite was acquired by UPS and the decedent's life insurance coverage transferred from the Aetna policy to UPS's Flexible Benefits Plan ("the Plan"), under a Prudential policy.[6]  After the Plan took effect on July 1, 2006, UPS became the plan administrator and the benefits department was transferred to UPS headquarters in Atlanta, Georgia.[7]

As earlier indicated, UPS used a third-party, Aon Hewitt, to administer the Plan.[8] Aon Hewitt prepared the enrollment worksheets and packets of documents to be mailed to employees, and provided the addresses for the employees to a third-party mailing company, CMD, which then put the packets together.[9]  Kathleen Earp, the benefits delivery director at Aon Hewitt, explained in her detailed testimony that, when Overnite's

---

[4] ECF doc. 79 at 118.

[5] ECF doc. 77 at ¶6.

[6] ECF doc. 81 at ¶1, ECF doc. 83 at ¶¶4-5, ECF doc. 79 at 119, 164-65.

[7] ECF doc. 79 at 166.

[8] *Id.* at 201, ECF doc. 81 at ¶11.

[9] ECF doc. 79 at 207-08.

employees were brought under the Plan in 2006, *every* employee (including the decedent) was sent a packet with a personalized enrollment worksheet detailing the various plan options, a copy of the Summary Plan Description ("SPD"), and the enrollment guide.[10] Ms. Earp testified that Aon Hewitt provided the enrollment materials to CMD on April 28, 2006 and, within three business days, CMD mailed the enrollment packets to the employees' home addresses.[11]

Plaintiff testified she personally does not recall ever seeing the above-described SPD, the Plan, or enrollment forms.[12]  But she doesn't dispute an enrollment guide for the Plan and an enrollment worksheet were sent to the decedent.[13]

In May 2006, the decedent was mailed a copy of the SPD.[14]  The enrollment materials contained a personalized identification number ("PIN"), which was necessary for any employee to make elections online or via telephone.[15]  On May 19, 2006, the decedent enrolled online for supplemental life insurance coverage under the Plan.[16]  On

---

[10] *Id*. at 205-06 and 208-09.

[11] *Id.* at 209-10.

[12] *Id.* at 83-84.

[13] *Id.* at 122-24, ECF doc. 81 at ¶7, ECF doc. 83 at ¶7.

[14] ECF doc. 77 at ¶22, ECF doc. 79 at 123-24, ECF doc. 81 at ¶8.

[15] ECF doc. 79 at 216-18, ECF doc. 81 at ¶20.

[16] ECF doc. 79 at 219, ECF doc. 81 at ¶19, ECF doc. 83 at ¶13.

July 1, 2006, the decedent's enrollment in the Plan became effective.[17]   The decedent then started paying for the supplemental coverage via automatic payroll deductions.[18]

The SPD specifically provides: "You are responsible for your share of the costs and may be billed if your leave extends beyond 20 days.  If you fail to make timely payment of this bill, your coverage will be terminated.  If you are billed, you must pay the billed amount; it will not be deducted from your paycheck when you return to work."[19]   It further provides: "If your leave extends beyond 20 days, you may be billed. If you fail to make timely payment of this bill, your coverage will be terminated.  If your supplemental life insurance is terminated for non-payment, you must provide evidence of insurability to begin coverage again upon return to work."[20]

On August 17, 2006 (i.e., less than two months after the supplemental life insurance became effective), the decedent went on approved medical leave from UPS.[21] Because his leave of absence extended beyond twenty days, the direct billing procedures under the Plan were triggered.[22]

---

[17] ECF doc. 77 at ¶14, ECF doc. 83 at ¶18, Exh. 405.

[18] ECF doc. 79 at 134, ECF doc. 83 at ¶25.

[19] Exh. 405 at Bates Nos. UPS29-UPS30.

[20] *Id.*

[21] ECF doc. 79 at 146, ECF doc. 81 at ¶23.

[22] ECF doc. 79 at 148, ECF doc 81 at ¶24, ECF doc. 83 at ¶20.

On September 10, 2006, Aon Hewitt's direct billings and payments service mailed the decedent a bill for the Plan, stating $526.24 was due by October 1, 2006—this bill related to various benefits, not just life insurance, for the period August 18, 2006 (the day after the decedent went on approved medical leave from UPS), through October 31, 2006.[23]   It's uncontroverted UPS never received payment for this September direct billing.[24]

On October 10, 2006, the decedent was mailed a second direct bill for the Plan, stating that $761.82 was due by November 1, 2006 (related to various benefits, including but not limited to life insurance, for the period from August 18, 2006 through November 30, 2006).[25]   It's uncontroverted UPS never received payment for this October direct billing.[26]

On November 10, 2006, the decedent was mailed a third direct bill for the Plan, stating that $986.13 was due (for the period August 18, 2006 through December 31, 2006).[27]   The November direct billing statement also contained a notice stating "because the amount due was not received by the date this statement was created … [c]overage

---

[23] ECF doc. 76 at ¶27, ECF doc. 79 at 229-34, ECF doc. 81 at ¶25, ECF doc. 83 at ¶42, Exh. 401.

[24] ECF doc. 77 at ¶49.

[25] ECF doc. 76 at ¶29, ECF doc. 83 at ¶44, Exh. 402.

[26] ECF doc. 77 at ¶50, ECF doc. 83 at ¶45.

[27] ECF doc. 76 at ¶31, ECF doc. 83 at ¶46, Exh. 403.

will be terminated effective 08-18-2006 unless your unpaid previous balance of $761.82 is received.  Once terminated, coverage cannot be reinstated.  THIS IS YOUR FINAL NOTICE FOR THE UNPAID PREVIOUS BALANCE."[28]   Here again, it's uncontroverted UPS never received payment for the November direct billing.[29]

Finally, on December 10, 2006, the decedent was mailed a "confirmation-of-coverage" letter, stating his life insurance (and the other benefits too) were terminated, effective August 17, 2006, because of nonpayment of premiums.[30]

UPS audits its mailing vendors to ensure they send out billing notices timely and accurately.[31]   Aon Hewitt also maintains a log of all billing notices generated and mailed to employees.[32]

As earlier indicated, plaintiff doesn't dispute that the above-described direct-billing statements and the termination letter were mailed to the decedent's address of record: 3225 Shady Bend Drive, Independence, Missouri 64052.[33]   However, plaintiff testified she and the decedent "shared the task of opening and reviewing any mail they

---

[28] ECF doc. 76 at ¶32, ECF doc. 83 at ¶47, Exh. 403.

[29] ECF doc. 76 at ¶33, ECF doc. 77 at ¶51.

[30] ECF doc. 76 at ¶34, Exh. 404.

[31] ECF doc. 79 at 189.

[32] *Id*. at 230-36.

[33] ECF doc. 76 at ¶36, Exhs. 401-04.

received at their home."[34]   Plaintiff testified she personally did not receive any of the direct premium billing statements or the termination letter at her home.[35]   But significantly, she admitted it's at least possible "mail came to [their] house and Mr. Fuimaono opened it and [she] just never saw it."[36]   And plaintiff admitted that the direct premium billing statements and confirmation-of-coverage letter were *not* returned to UPS as undeliverable.[37]

The decedent died on January 31, 2007.[38]   On or about February 8, 2007, plaintiff called UPS (the decedent's employer) to report his death, and she was told to contact Prudential (the insurer).[39]   Significantly, at least given plaintiff's claim in this case that UPS failed to timely disclose certain information, it is uncontroverted that during this call to UPS, plaintiff did *not* request copies of plan documents, letters sent, claim documents, or anything similar.[40]

---

[34] ECF doc. 79 at 90-91.

[35] *Id.* at 58-60, 62, 65.

[36] *Id.* at 91, ECF doc. 81 at ¶30.

[37] ECF doc. 83 at ¶37.

[38] ECF doc. 76 at ¶39, ECF doc. 79 at 67, ECF doc. 83 at 43.

[39] ECF doc. 79 at 67-69.

[40] *Id.* at 92-93.

Later, plaintiff called Prudential and was advised that claim forms would be mailed for her completion.[41]  But here again, during plaintiff's call to Prudential, she did not ask for any plan documents, the SPD, or copies of letters sent.[42]  Plaintiff only reported the decedent's death and asked for the claim forms.[43]

On March 27, 2007, plaintiff made a formal written claim for the decedent's life insurance benefits.[44]  Basic life insurance benefits (i.e., equal to one-year's pay) were paid to plaintiff by Prudential on April 13, 2007.[45]

Later, in 2008, plaintiff called Prudential to ask why she had not been paid the supplemental life insurance benefits (i.e., twice one year's pay).[46]  Prudential informed plaintiff the supplemental life insurance had been cancelled for failure to pay premiums.[47] Here again, during this call, plaintiff didn't request copies of the SPD, the Plan, letters,

---

[41] *Id.* at 95-96.

[42] *Id.* at 96-97.

[43] *Id.* at 97.

[44] ECF doc. 76 at ¶40.

[45] *Id.* at ¶41.

[46] ECF doc. 79 at 72.

[47] *Id.* at 73.

claim documents, or any other documents.[48]  Nor did she request contact information for anyone at UPS or the benefits department at UPS.[49]

About two years later, on August 29, 2010, plaintiff's counsel sent a letter on her behalf requesting certain plan and claim documents under ERISA.[50]  Notably, though, counsel's letter was addressed not to UPS or Prudential, but rather to "Overnite Benefits Department, P.O. Box 1216, Richmond, Kentucky" and "Aetna FSA, P.O. Box 4000, Richmond, Kentucky."[51]  Unsurprisingly, given that UPS's acquisition of Overnite had been completed five years earlier, UPS has no record of ever receiving the August 29, 2010 letter to Overnite.[52]

About another year later, on August 11, 2011, plaintiff's counsel followed up and sent a second letter, requesting certain plan and claim documents under ERISA.[53]  Once again, though, the letter was addressed to Overnite's benefits department in Richmond, Virginia.[54]  As such, UPS has no record of ever receiving this letter.[55]  It should be noted,

---

[48] *Id.* at 97-98.

[49] *Id.* at 97.

[50] Exh. 419.

[51] *Id.*

[52] ECF doc. 79 at 167.

[53] Exh. 418.

[54] *Id.*

[55] ECF doc. 79 at 169.

however, this second letter by counsel *was* correctly addressed to Prudential (instead of Aetna), but it's uncontroverted that Prudential did not forward the letter to UPS.[56]

There is no record of plaintiff or her legal counsel ever *directly* making a request, written or orally, for plan documents, or plan information from UPS or its plan administrator, Aon Hewitt.[57]

On September 16, 2011, Prudential sent plaintiff a letter stating it relied on a third-party administrator, Hewitt Associates, to provide the requested records for those insured through UPS, and explaining that plaintiff did not receive supplemental benefits because the policy lapsed on August 17, 2006, due to non-payment of premiums.[58]  Prudential sent a second letter to plaintiff on September 29, 2011, again stating the supplemental policy had lapsed on August 17, 2006, due to non-payment of premiums and advising plaintiff of her appeal rights and procedures.[59]

On January 31, 2012, plaintiff filed suit to recover the supplemental life insurance benefits in the District Court of Johnson County, Kansas.[60]  Plaintiff filed an amended petition on February 8, 2012.[61]  Prudential then removed plaintiff's case to federal

---

[56] *Id* at 170; Exh. 418.

[57] ECF doc. 79 at 100, 238.

[58] ECF doc. 77 at ¶67.

[59] *Id.* at ¶68.

[60] ECF doc. 83-1.

[61] ECF doc. 1-1.

court.[62]  Plaintiff stipulates that shortly thereafter, Prudential produced the Plan and SPD, and that UPS produced its records pertaining to plaintiff's claim.[63]

### III.   Conclusions of Law.

As reflected by the pretrial order,[64] plaintiff has three separate ERISA claims in this case.  Specifically, plaintiff asks the court to award her:  1) judgment against defendants for $170,000—the amount of the decedent's supplemental life insurance plan benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B); 2) penalties against UPS for failure to furnish materials and information regarding the Plan within thirty days of her August 11, 2011 letter to Overnite and Prudential, including up to $110 per day for each day that UPS failed to do so, pursuant to 29 U.S.C. § 1132(c)(1)(B); and 3) costs and reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).[65]  Plaintiff also argues that UPS failed to provide the decedent with notice of cancellation in compliance with a state statute, Kan. Stat. Ann. § 40-411, and therefore UPS's "attempt to cancel or forfeit" the decedent's supplemental insurance was null and void.

### A.   Statute of Limitations.

Defendants assert that all of plaintiff's claims are barred by the Plan's contractual three-year limitations period within which a beneficiary must file legal action concerning

---

[62] ECF doc. 1.

[63] ECF doc. 83 at ¶¶66-67.

[64] ECF doc. 62 at 10.

[65] ECF doc. 42 at 6-7.

O:\Trial\12-2135_McFarland v UPS\M&O final.docx

a claim for benefits.  As mentioned above, it's uncontroverted this suit was filed nearly

five years after plaintiff made her formal claim for the decedent's supplemental life

insurance benefits.  For the reasons explained below, the court rejects defendants'

limitations-based argument.

Because ERISA does not contain a statute of limitations for private enforcement

actions, courts generally apply the most analogous statute of limitations under state law.[66]

Parties to an ERISA plan are free, however, to include a reasonable contractual

limitations period in a plan.[67]  Here, defendants rely on that part of the Plan which

provides:

> **CLAIM RULES**
>
> These rules apply to payment of benefits under all accident COVERAGES.
>
> **Legal Action**: No action at law or in equity shall be brought to recover on the Group Contract until 60 days after the written proof described above is furnished. No such action shall be brought more than three years after the end of the time within which proof of loss is required.[68]

Plaintiff responds that she is not claiming *accidental* coverage because the decedent died

from cancer; instead, she is claiming supplemental life insurance coverage.  Therefore,

---

[66] *Young v. United Parcel Servs., Inc. Short Term Disability Plan, et al.*, No. 10-4156, 2011 WL 984734, at *2 (10th Cir. Mar. 22, 2011) (citing *Salisbury v. Hartford Life & Accident Co.*, 583 F.3d 1245, 1247 (10th Cir. 2009)).

[67] *Id.* (citing *Salisbury*, 583 F.3d at 1247-48).

[68] Exh. 426 at Bates No. 0133.

plaintiff asserts the three-year limitations provision doesn't apply to her claim for supplemental life insurance coverage.

In construing the terms of an ERISA plan, the court must give language in the plan documents "its common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean."[69]   Plaintiff seeks coverage under the "Supplemental Employee Term Life Coverage" section of the Plan.[70]   Defendants do not even address the fact that the provision upon which they rely appears on its face to only apply to claims for accidental coverage.   Nor do defendants address the fact that the above-cited provision is preceded by the section of the Plan concerning "Supplemental Accidental Death and Dismemberment Coverage."[71]   The court therefore finds as a matter of law that the Plan contains no contractual limitations period that's applicable to plaintiff's claim.

At most, what types of coverage the "Legal Action" provision of the Plan applies arguably is ambiguous.   But "[t]he duty of clarity falls upon the plan sponsor."[72]   Where the terms of the policy of insurance are ambiguous, uncertain, conflicting or susceptible

---

[69] *Young*, 2011 WL 984734, at *2.

[70] *See* Exh. 426 at Bates No. 0107.

[71] *Id*. at Bates No. 0119.

[72] *Young*, 2011 WL 984734, at *4 (quoting *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1518 (10th Cir. 1996)).

of more than one meaning, the construction most favorable to the insured must prevail.[73] The terms of a policy are construed against the insurer in close cases because "the crafter must suffer the consequences of not making terms clear."[74]   And so even were the Plan ambiguous in this regard (and the court believes it's not), defendant's limitations-based argument is wholly unpersuasive.

In consideration of the foregoing, the court finds the above-cited provision of the Plan inapplicable to the plaintiff's claim for supplemental life insurance coverage.  The most analogous statute of limitations under Kansas state law is five years.[75]   The decedent died on January 31, 2007.  Plaintiff made her formal, written claim for benefits on March 27, 2007.  Plaintiff filed this suit on January 31, 2012.  Therefore, plaintiff's action is not time-barred.

### B.    Claim for Supplemental Life Insurance Benefits.

Turning to the merits, the court finds plaintiff has failed to sustain her burden of proof by a preponderance of the evidence on her first claim, which alleges a violation of 29 U.S.C. § 1132(a)(1)(B).   Plaintiff's testimony, although not wholly lacking in credibility, ultimately is insufficient to rebut the presumption that her husband (the insured-decedent) received notice of cancellation of the Plan for failure to timely pay

---

[73] *Westchester Fire Ins. Co. v. City of Pittsburg, Kansas*, 768 F. Supp. 1463, 1467 (D. Kan. 1991) (citations omitted).

[74] *Id.* (citations omitted).

[75] *See* Kan. Stat. Ann. § 60-511 ("action upon any agreement, contract or promise in writing … shall be brought within five (5) years").

premiums.  In this regard, it's important to recognize that the Tenth Circuit applies the common-law mailbox rule, i.e., "[w]hen mail is properly addressed and deposited in the United States mails, with postage duly prepaid thereon, there is a rebuttable presumption that it was received by the addressee in the ordinary course of mail."[76]  Allegations about mailing are easy to make and hard to disprove.[77]  It's well established that evidence "[m]erely stating that the document isn't in the addressee's files or records … is insufficient to rebut the presumption of receipt" that arises under the mailbox rule.[78]

As earlier indicated, plaintiff doesn't dispute defendants *mailed* the decedent direct-premium billing statements and a termination letter to the address provided to UPS in the decedent's employment records.[79]  Plaintiff only denies that *she* herself ever *received* any of the direct-premium billing statements and termination letter at her home.[80]  The *only* evidence plaintiff submitted to try to prove that neither she nor the decedent received the billing statements was her own testimony, and still she admitted it's possible that "mail came to [their] house and Mr. Fuimaono opened it and [she] just

---

[76] *Sorrentino v. I.R.S.*, 383 F.3d 1187, 1190 (10th Cir. 2004) (quoting *Crude Oil Corp. v. Comm'r*, 161 F.2d 809, 810 (10th Cir. 1947)).

[77] *Id.* at 1194 (citing *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996)).

[78] *Huizar v. Carey*, 273 F.3d 1220, 1223 n. 3 (9th Cir. 2001); *see, e.g., Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 959 (9th Cir. 2001)).

[79] ECF doc. 83 at ¶36.

[80] *Id.* at ¶39.

never saw it," and that she and the decedent "shared the task of opening and reviewing any mail they received at their home."[81]

Defendants presented detailed and very persuasive evidence to raise the presumption.  With no disrespect intended toward plaintiff, her fairly vague testimony is insufficient to defeat the presumption of receipt.[82]

Plaintiff argues that even if the court finds the direct billings and confirmation-of-coverage letter were mailed and received, the notices were insufficient to comply with the requirements of Kan. Stat. Ann. § 40-411.[83]   That Kansas statute provides:

> Before any such cancellation or forfeiture can be made for the non-payment of any such premium the insurance company shall notify the policyowner of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such policyowner shall have the right, at any

---

[81] ECF doc. 79 at 90-91, ECF doc. 81 at ¶30.

[82] Plaintiff's testimony, that the practice in her household was for the decedent to get the mail and lay it on the table, and that she and her husband "shared the task of opening and reviewing any mail" (ECF doc. 79 at 89-91), contrasts to the select cases where federal courts have found the presumption rebutted.  *See, e.g.*, *In re Todd*, 441 B.R. 647, 652 (Bankr. D. Ariz. 2011) (presumption of receipt rebutted based on evidence of specific, precise, and detailed mail handling procedures that were unrebutted along with evidence via six individuals' affidavits that accounted for every [potentially percipient] person, none of which saw the notice and each of whom had responsibility and would have responded if such a notice had been seen); *see also In re Robinson*, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998) (although the mere denial of receipt does not rebut the presumption, testimony denying receipt in combination with evidence of standardized procedures for processing mail can be sufficient to rebut the presumption); *and In re Winders*, 201 B.R. 288, 290 (D. Kan. 1996) (direct testimony of nonreceipt in combination with standardized procedures used in processing claims sufficient to support finding that mailing was not received).

[83] ECF doc. 83 at 17-19.

> time within thirty (30) days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such policyowner to the address last known by such company, to pay such premium.

In response, defendants argue the Plan is governed exclusively by ERISA and that Kan. Stat. Ann. § 40-411 therefore is inapplicable.

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan (emphasis added)."[84]   Plaintiff's claim obviously "relates to a benefit plan" and is, therefore, governed by ERISA.   Plaintiff provides no argument in response other than "[t]he 10th Circuit has not specifically found that Kan. Stat. Ann. 40-411 is superseded by ERISA."[85]

The purpose of ERISA is to provide uniformity in the administration of benefit plans and there's a strong preference for preemption of statutes concerning subjects central to ERISA's purpose.[86]   One of ERISA's core purposes is to provide uniformity in the administration of employee-benefit plans and avoid subjecting plan administration to varying standards created by differing state laws.[87]   The Supreme Court has not hesitated

---

[84] 29 U.S.C. § 1144(a).

[85] *See* 29 U.S.C. § 1144(b)(2)(A); *see also* ECF doc. 83 at 17, ¶11.

[86] *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 570 (11th Cir. 1994) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)).

[87] *Id.* at 570-71 (citations omitted).

"to apply ERISA's preemption clause to state laws that risk subjecting plan administrators to conflicting state regulations."[88]

Under ERISA's so-called savings clause, ERISA does not supersede any state law that has the effect of regulating "insurance, banking, or securities."[89]  The scope of the savings clause was discussed in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985).  The Supreme Court adopted a three-prong test for determining when a state law regulates the "business of insurance" for purposes of the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., and applied it to ERISA's savings clause.  The three relevant factors are:  (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.[90]  More recently, the Supreme Court simplified its analysis by stating that, for a state law to be deemed a "law … which regulates insurance" under 29 U.S.C. § 1144(b)(2)(A), it must: (1) be specifically directed toward entities engaged in insurance; and (2) it must substantially affect the risk pooling arrangement between the insurer and insured.[91]

---

[88] *Id.* at 571 (quoting *FMC v. Holliday*, 498 U.S. 52, 59 (1990)).

[89] 29 U.S.C. § 1144(b)(2)(A).

[90] *Metro. Life Ins. Co.*, 471 U.S. at 743 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 120 (1982)).

[91] *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003) (citations omitted).

Defendants argue that although the Kansas statute clearly meets the first prong of the *Miller* test (i.e., the statute is directed toward entities engaged in insurance), it does not meet the second prong.  The Supreme Court has explained that the risk-spreading principle concerns the nature of the coverage of the policy—in other words, the risks of injury that the insurance company will bear for the insured.[92]   Defendants assert that the Kansas statute does not spread risk because it has nothing to do with what is and is not covered by the policy. The court agrees.

Moreover, the Kansas statute does not impact the policy relationship between the insurer and the insured because it regulates the administration of policies, not their terms.[93]  With only one of the three prongs of the test in *Metropolitan Life Insurance* met, with the limited record before the court on this issue, and in light of the presumption in favor of preemption, the court finds that the savings clause does not apply to Kan. Stat. Ann. § 40-411, and this case must proceed exclusively under ERISA.  Accordingly, regardless of whether the decedent was accorded notice that would comport with Kan. Stat. Ann. § 40-411, the court finds decedent's supplemental life insurance coverage was properly canceled according to the terms of the Plan.  Plaintiff is not entitled to supplemental life insurance benefits.  Therefore, plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) is dismissed.

---

[92] *Smith*, 14 F.3d at 569 (citing *Union Labor Life Ins. Co.*, 458 U.S. at 130).

[93] *See id.* at 570 ("the kind of notice that is required in order to terminate coverage is a matter that lies at the core of plan administration").

### C.      Claim for Failure-to-Disclose Penalties.

Plaintiff also has failed to sustain her burden of proof by a preponderance of the evidence on her second claim against UPS, which alleges a violation of 29 U.S.C. § 1132(c)(1)(B).  That statute  provides that any administrator:

> Who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Considering the facts and circumstances of the case, the court finds imposition of penalties clearly would be inappropriate.  Most significantly, it's uncontroverted that plaintiff never sent a letter requesting information to UPS or its plan administrator, Aon Hewitt.  Unsurprisingly, UPS has no record of receiving the letter that was incorrectly addressed and sent by plaintiff's counsel to Overnite and Aetna in August 2010. Although a second letter was sent in August 2011 to Prudential, that letter was never forwarded to or received by UPS.  Furthermore, despite Prudential's September 16, 2011 response letter, advising plaintiff that Aon Hewitt was the third-party administrator of the Plan for UPS, nothing in the record indicates plaintiff ever followed up to request documents from Aon Hewitt or UPS.  Instead, plaintiff filed suit in January of 2012 and received documents shortly thereafter.   UPS's alleged failure to provide documents

O:\Trial\12-2135_McFarland v UPS\M&O final.docx

resulted from matters reasonably beyond its control.  Therefore, plaintiff's claim under 29 U.S.C. § 1132(c)(1)(B) is dismissed.

**D.     Claim for Attorney's Fees.**

Finally, the court finds plaintiff has failed to show that she's entitled to recover on her third claim for costs and attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).  Under this statute, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.  Since plaintiff has not established that defendants violated ERISA in any way, it follows she shouldn't be awarded any attorney's fees. The court finds that each party shall bear their own attorney's fees and costs associated with this action.

## IV.   Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.     Plaintiff's first claim, for the decedent's supplemental life insurance benefits under 29 U.S.C. § 1132(a)(1)(B), is dismissed.

2.     Plaintiff's second claim, for penalties under 29 U.S.C. § 1132(c)(1)(B), is dismissed.

3.     Plaintiff's third claim, for attorney's fees under 29 U.S.C. § 1132(g), is dismissed.

4.     Each of the parties shall bear their own attorney's fees and expenses associated with this case.

O:\Trial\12-2135_McFarland v UPS\M&O final.docx

5.      Judgment will accordingly be entered in favor of defendants and against plaintiff on all claims.

Dated July 30, 2014, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

O:\Trial\12-2135_McFarland v UPS\M&O final.docx

23